## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## (LOUISVILLE DIVISION)

| | | |
|---|---|---|
| **MARY KRAMER** | : | **Case No. 3:16-cv-00243** |
| | : | |
| **Plaintiff,** | : | **Judge Thomas B. Russell** |
| | : | |
| **vs.** | : | |
| | : | |
| **UNIFUND CCR PARTNERS,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## Plaintiff's Unopposed Motion and Memorandum for Award of Incentive Payment, Attorneys Fees, and expenses

Plaintiff respectfully moves this Court for an order awarding an incentive payment of $8,000.00 to Plaintiff Mary Kramer, and attorney fees and expenses of $45,000.00. This motion is supported by the attached memorandum and affidavit.

Counsel for Defendants has seen this motion and does not oppose it.

Respectfully Submitted,

/s/ Ben Carter
Ben Carter
Ben Carter Law PLLC
900 S. Shelby St.
Louisville, KY 40203
*Attorney for Plaintiff*

### Certificate of Service

I hereby certify that on this 28th day of December, 2017, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all of the attorneys of record in the case.

  /s/ Ben Carter
Ben Carter

## MEMORANDUM IN SUPPORT OF MOTION

### I. Introduction

Named Plaintiff, Mary Kramer, filed this class action complaint in Jefferson County

Circuit Court in Jefferson County, Kentucky, alleging that Defendants had violated the FairDebt

Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), by seeking to collect account

balances from Class Members that contained charges for postjudgment interest that had been

compounded more frequently than allowed by Kentucky law. (Kentucky law allows for the

compounding of postjudgment interest annually. KRS 360.040)

The Defendants then removed the case to this Court on April 27, 2016. (Doc. #1).

After extensive negotiations, the parties eventually agreed on a class settlement, filed with

this Court on August 4, 2017. (Doc. #12-1). In Section 6 of the agreement, Defendants agreed to

pay an incentive award of $8,000.00 to the Class Representative for the work she did and risk she

took to bring this litigation on behalf of more than a thousand class members. In Section 5 of that

Agreement (Page ID#:81), Defendant also agreed to "pay the total sum of Forty Five Thousand

Dollars ($45,000) as and for reasonable attorney fees and costs…subject to Court approval." The

Class Representative and Class Counsel now seek the Court's approval of both the incentive

award and the attorney's fees to which the parties agreed in the Settlement Agreement (Doc.

#12-1).

### I. The Class Representative's Request For An Incentive Award Is Reasonable And Warranted By The Circumstances Of This Case.

The Settlement Agreement provides for a relatively modest incentive award to the named

Plaintiff in the amount of $8,000. [Settlement Agreement, Doc. 12-1, Section 6]. This award is

intended to recognize the time and effort that the Plaintiff has invested in the case on behalf of the

Class.

"Courts routinely approve incentive awards to compensate named plaintiffs for the

services they provide and the risks they incurred during the course of the class action litigation."

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). See *Enter. Energy*

*Corp.*, 137 F.R.D. at 251 (approving incentive awards of $50,000 to each of the class representatives out of a settlement fund of $56.6 million); *In re Dun & Bradstreet*, 130 F.R.D. 366, 373-74, (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 incentive award out of a $5.25 million fund). The amount of the incentive payment agreed to by the parties in this litigation is much smaller—$8,000—in part because the funds at issue in this litigation are smaller than the funds cited above. Nevertheless, the incentive payment is large enough to incentivize other class representatives in the future and is also appropriate in this specific litigation given the nature of this case and the time and risk taken by Ms. Kramer on behalf of the class.

As described in Class Counsel's Declaration, the Class Representative in this case brought to Class Counsel the documents that formed the absolute essence of the class's claims— documents she obtained (prior to her relationship with Class Counsel) only after requesting servicing records and account histories from her creditor. Furthermore, the Class Representative: (1) assisted counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the preparation of the complaint; (3) reviewed pleadings, correspondence, other documentation received from Class Counsel in order to keep themselves apprised of the progress of the litigation; (4) spent substantial time meeting with Class Counsel and assisting in negotiations, as well as reviewing the settlement proposal. Carter Decl., at **Exhibit 1**, ¶¶34-37.

Moreover, as with any party who files a civil action, the Class Representative undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, she could have potentially been personally saddled with the costs awarded in favor of Defendant, and received nothing.

The Named Plaintiff has been patient and loyal to the class, foregoing any attempt to reach an individual settlement which could have been more lucrative for her personally, and instead insisted on obtaining class relief first. As articulated in counsel's Declaration at **Exhibit 1**, this loyalty and commitment of time is particularly laudable given Ms. Kramer's status as the

primary caregiver of an adult child. Her son's medical conditions require near-round-the-clock attention, so the time Ms. Kramer took in person and on the phone (not to mention the time she potentially committed to when anticipating depositions, discovery, and trial) to investigate, prosecute, and negotiate her and the classes's claims was particularly precious.

> **The facts in *Pelzer v. Vassalle* are very different from the results achieved for this class; here, the financial benefit to the class members' far exceeds the class benefits in *Pelzer*.**

At the parties' August 16, 2017 hearing on the Motion for Preliminary Approval, this Court asked counsel to specifically address the case of *Pelzer v. Vassalle*, 655 Fed.Appx. 352 (6th Cir. 2016) with respect to the proportionality of the class representative's incentive award to the recovery of the unnamed class members. In *Pelzer*, the Sixth Circuit Court of Appeals initially rejected the proposed settlement as being too generous to the named Plaintiffs: those four named Plaintiffs would each—in addition to having the entirety of their home loan debts forgiven— receive $2,000 cash payments. Meanwhile, under the initial settlement agreement, the unnamed class members would get credits of $17.38 to their accounts. On appeal to the Sixth Circuit for the second time, the Court of Appeals approved a modified class settlement agreement over the objection of some class members. The new settlement terms did not include forgiveness of mortgage debt of the named Plaintiffs and also reduced the incentive payments to named Plaintiffs to $1,000 as compared to the $18.75 credit provided to unnamed class members.

On the surface, the math regarding the ratio between class representative-to-class member does not appear to support the incentive award sought by Ms. Kramer. After all, the ratio of incentive award-to-credit approved by the 6th Circuit in *Pelzer* is 53:1 ($1,000 to $18.75) while Ms. Kramer's incentive award is 123:1 ($8,000 as compared to $65). However, when one considers that the total amount of incentive awards paid to the four named Plaintiffs in *Pelzer* totaled $4,000, the ratio of incentive awards-to-credit in that case soars to 213:1. The amount sought by Plaintiff in this case is well within the ratio approved by the Sixth Circuit in *Pelzer*.

More importantly, however, simply reviewing the fairness of the incentive award by comparing that amount to the credit the class members receive ignores a fundamental truth about

the settlement in this case: *the vast proportion of the financial benefit to the class members in this settlement comes from the corrections to the accounts the Defendants made and the refunds to class members who overpaid.* In *Pelzer*, the $18.75 credit was the *only* financial benefit the class was receiving. Here, however, as a result of Ms. Kramer's efforts, class members have enjoyed corrections to their accounts that enormously overshadow the credits or cash payments made by Defendants in this case. Simply put, comparing ratios of incentive payment-to-credit is simply the wrong way to judge the success of this litigation and the benefit Ms. Kramer provided to the class. In reality, Plaintiff's incentive payment of $8,000 represents a small fraction of the entire financial benefit enjoyed by the class as a result of her efforts.

Finally, the requested incentive award was described in the Notice to the Settlement Class and (unlike *Pelzer*) no Class Member has objected to the incentive award being requested. The incentive award was negotiated only after relief to the class was settled, and in no way reduces the amounts the class members receive. In light of the work that the Class Representative performed on behalf of Settlement Class Members, and the Settlement Class Members' response to the settlement, the requested incentive award is reasonable and appropriate to the resolution of this case.

## II. Legal Basis for an Attorney Fee Award.

An award of attorney fees is mandatory in FDCPA cases where the Plaintiff obtains a judgment. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). Congress has legislated provisions in statutes such as the FDCPA, whereby prevailing parties may seek to recover attorney fees from their opposition, to encourage consumers to act as "private attorneys general." *Mann v. Acclaim Fin. Servs. Inc.*, 348 F.Supp.2d 923, 927 (S.D. Ohio 2004). This encourages enforcement, and therefore encourages debt collectors to follow the law. This is important in a regulatory setting where the Federal Trade Commission and other regulatory agencies do not have the resources to enforce the FDCPA on a meaningful scale.

Here, Defendant has agreed to pay Plaintiff's counsel a reasonable attorney fee and expense reimbursement of $45,000, pursuant to the settlement agreement (Doc. #12-1), as approved by this Court. (Doc. #14).

The criteria for the award of attorney fees are set forth in *Blum v. Stevenson*, 465 U.S. 886 (1984), *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *City of Burlington v. Dague*, 505 U.S. 557 (1992), and *Northcross v. Bd. of Ed. of Memphis School District*, 611 F.2d 624 (6th Cir. 1979). This Court summarized the "lodestar" approach—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—in *Alloys Intern., Inc. v. Aeronca, Inc.*, S.D. Ohio No. 1:10-CV-293, 2012 WL 5495180, *2 (Nov. 13, 2012) (Black, J.).

### A. The Requested Hourly Rate is Reasonable.

Attorney Ben Carter has represented Plaintiff in this case. His declaration, which includes his trial experience and experience in consumer cases, is attached at **Exhibit 1**. Consumer litigation constitutes the vast majority of his practice.

The Supreme Court has held that attorney fees are to be "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, supra, 465 U.S. at 895. The hourly rate requested by Plaintiff meets that standard. Plaintiff requests a conservative hourly rate of $375 per hour. The declaration supports this rate as being commensurate with or below the average rates for attorneys with the same skill and experience in the Louisville, Kentucky metro region. *See* "Affidavit of Allan Cobb" attached at **Exhibit 2**.

The declaration of counsel shows that that he is experienced in litigating a wide variety of consumer cases, including Fair Debt Collection Practices Act cases.

### B. The Hours Expended by Plaintiff's Counsel Were Reasonable.

Once the hourly rate has been determined, the next step is to calculate the hours reasonably expended on the action. *Northcross*, supra, 611 F.2d at 636-37, sets forth the procedure for doing so. The Court should rely primarily on the declarations of counsel in making a finding that counsel has spent a particular amount of time on the matter. The hours claimed need not be

6

automatically accepted, but to the extent hours are rejected the Court must indicate some reason for its action. Time spent for litigating the fee issue should also be included in the award, though in this case that time has been relatively limited since there is agreement among the parties on the appropriateness of the requested fee. *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir. 1979).

Mr. Carter has submitted a declaration showing that he expended 90.0 hours on this case —a modest amount of time considering the prelitigation research and work involved and that the settlement was the result of months of negotiation and many rounds of correspondence arguing the various merits of the parties' positions.

Class Counsel's lodestar is calculated as follows: 90.0 hours x $375/hr = $33,750.00. Carter Decl., ¶ 29. This time includes estimates for the time that counsel will spend preparing for and attending the final fairness hearing and time spent on future inquiries from class members, but does not anticipate time spent responding to any objections to the final class settlement.

Class Counsel has also incurred $213.03 in expenses.

The proposed fee award was negotiated only after relief to the class was settled, and in no way reduces the amounts the class members will receive.

### C. The Attorney Fee Award Enhancement of Approximately 1.5x to $45,000 is appropriate under the circumstances.

As articulated in the Class Counsel's Declaration, the parties anticipated that Class Counsel's lodestar attorneys' fees would be approximately $30,000 at the time they negotiated the payment of attorney's fees of $45,000. Again, this fee was negotiated *after* agreeing upon the settlement terms as affected the Class Members. Agreeing to settle class litigation with an enhancement beyond lodestar attorneys' fees—sometimes called a multiplier—is common. These enhancements recognize the value the attorney provided to the class members and the risk the attorney took in selecting this over other more "sure-fire" ways to make money as an attorney.

Courts routinely award enhancements between 1 and 4 times larger than the attorney's lodestar fees. This was the finding made by the 9th Circuit Court of Appeals in *Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002). There, the Court surveyed twenty-four cases and found

7

that 13 of the 24 contained enhancements in the 1.5–3.0 range. *Vizcaino* at 1051, footnote 6. Here in Kentucky, Judge Wilhoit approved an attorney fee request in the Beverly Hills Fire litigation that contained multipliers of 5x, 3x, and 2.5x for some of the attorneys working on the litigation. *In re Beverly Hills Fire Litigation*, 639 F.Supp. 915, 924 (E.D.Ky. 1986).

In this case, Class Counsel's time and attention led to the certification of a class that included debtors affected up to five years ago by the conduct alleged in this action. The settlement, including the corrections made to over a thousand of the Defendants' accounts, represents a broad and comprehensive remedy for a problem affecting more than a thousand Kentucky families. Class counsel has dedicated years of his practice to learning various areas of state and federal law that are available to consumers to protect them from allegedly unlawful conduct. Without that experience and training, counsel would likely not have been able to recognize Defendant's conduct as (allegedly) violative of federal and state law or prosecute the class's claims effectively. The law allows the Court to enhance a pure lodestar fee to recognize instances in which the skill required to perform the legal service properly, the amount involved and the results obtained, and the experience, reputation, and ability of the attorney(s) recommends such an enhancement. *In re Beverly Hills Fire Litigation* at 919.

Enhancements like the one agreed upon by the parties in this case also serve to encourage attorneys (class counsel and the bar generally) to spend the time and energy to work and train in an area of law (consumer law) to provide a service to the public typically only provided by the limited resources of legal aid organizations. As noted by Mr. Cobb (and which class counsel can also represent to the Court), far fewer private attorneys serve consumers in Louisville and Kentucky relative to other communities and states our size. The lack of a well-developed private bar of consumer lawyers represents a significant barrier to justice for many people in our community.

Here, class counsel humbly submits that the outcome achieved for this class and his skill and experience recommends approving the modest enhancement (approximately 1.5x) to his lodestar fee contemplated by the parties' Settlement Agreement.

8

## Conclusion

Based on the above authority, Plaintiff requests that this Court approve the agreement

between the parties and award Plaintiff an incentive payment of $8,000.00 to Ms. Kramer and

/s/ Ben Carter
Ben Carter
Carter Law PLLC
900 S. Shelby Street
Louisville, Kentucky 40203
ben@bencarterlaw.com
*Attorney for Plaintiff*